The next case on the calendar is Cal v. SEC. Good morning. Good morning. My name is Alex Lipman, and I represent Harding Advisory and Wing Chau. I think the question for this Court really is only one question, and that is, is there still a possibility of finding jurisdiction in this case, given the Tilton decision? And the answer to that is yes, and let me just summarize a couple points, and then I can fill them in. The first and primary point is that there is a need to develop a record on the due process or not due process, I apologize, because we're not pursuing equal protection. There's a need to develop a record on equal protection claim. And as Judge Rakoff pointed out in his Gupta opinion, the commission is, what do you say, inherently conflicted, right, because the accusation is in the complaint that something went wrong at the commission, and the forum was chosen for an improper purpose, right? And whether it's the commission or somebody else, but the commission has acted, and so now the commission would be in a position where it has to either give the discovery on the issue or police the discovery on the issue, and the commission's prestige and reputation are implicated. But whenever there is a claim, it seems to me, Mr. Lipman, of a constitutional against the commission, for example, under Article II, there is going to be built into it an inherent conflict that the commission is just going to have to grapple with, and if it's unable, this is the spin, if it's unable to grapple with it in a fair way as opposed to an arbitrary way, then you have the benefit of meaningful review from the Court of Appeals. That is true, Your Honor, in most cases. It's not true in every case. And this is a particular situation, right? In Tilton, the reason that I think Tilton came out the way that it did is that the Court said, look, you can wait, right? And you can wait, and consistent with what the Supreme Court has said in Thunder Basin and Free Enterprise, you can wait, and at some point you're going to get your day in court, and it's just going to be as fair as anything else, because the question is, are they appointed properly, are they not appointed properly? It's binary. A Court of Appeals can decide that, no problem. But the issue here is different. The issue here is we need discovery on something that happened in the commission. Let me — let me — But don't you have the opportunity to have the Court of Appeals, when we're viewing it, remand it for fact-finding? Not always. Well, in each of these acts, the Advisers Act, the Company Act, they all have provisions that the Court of Appeals can remand it to for additional fact-finding. Each of these acts have that provision. That is correct, Your Honor. And every case that has looked at this, including Judge Rakoff and Gupta, has said, well, what happens if you win? Does the case go away if you win on the merits in the commission? We do not. The equal protection violation happened when they put us in the wrong forum for the wrong purpose, right? And that continues. So if we were to win on the merits, I'm not sure that we could actually appeal from that, because I'm not sure there would be — we would be aggrieved by an order of a commission under this charge. Well, if you win, what's your problem? If our — If you prevail below. If we prevail below, we still have — we were still — our rights were violated. What was the — what is the injury? Describe for me with precision the injury, the constitutional injury that you're claiming. The constitutional injury is that because of — because of prejudice, and I don't mean — Not bias, right. I mean personal prejudice against this individual. Oh. Okay? They put us in administrative proceeding for the purpose of making it difficult for us to succeed on the merits and also to hide misconduct by one of their employees. That is significant. That is the class of one injury that you are — That is correct. But that's — isn't that at the very least intertwined with the proceeding itself? Let me — let me address that, because I don't think that it is. So in all of these other cases, you would — if you went up and you had your complaint heard, you then can get a hearing from the court of appeals, and the court of appeals can decide on the merits. Here, here's the situation. We are — if we win, I'm not sure that we can appeal, because there may not be an order to appeal. But even if we could, right? But you — look, you can manufacture — not in a bad way, but manufacture an order such that you can appeal, but — Well, I'm not sure, because the order comes from the commission. That's an aside that we may get to in a second. But if — go ahead. Okay. But — but — so what would happen is we don't have a record. We need to develop a record. So now we go and appeal. Let's assume that we won. Now the court of appeals has to send us down to the administrative proceeding. But the merits have been decided. So now we are in the administrative proceeding before the commission trying to ascertain whether our equal protection rights were violated. And the people who are supposed to give us the discovery and police the discovery are the people whom we are accusing of — of bad conduct. Right? That — that flies in the face of what the Supreme Court called the requirement of — of — that someone cannot be a judge in his own case or her own case. Well, but the court of appeals is the ultimate — ultimately, you're pressing the equal protection claim or have pressed the equal protection claim before the agency. You've asked for discovery before the agency. You've taken all steps there. You arrive at the court of appeals. You press your equal protection claim before the court of appeals. The court of appeals says, we need some more facts. We'll supplement the record. I'm having difficulty seeing why that wouldn't constitute meaningful judicial review. And as you realize, that's the most important factor here. It — it constitutes meaningful judicial review of questions that can be resolved, or if there is a question — if there is a — a fact question that needs to be resolved, if that fact — the resolution of the fact question does not implicate the conduct of the people on whom we are relying for the resolution of those — that fact question. Right? It — it puts them in a — in conflict, and — and one other point is — is that the commission has now changed its rules of practice such that — this is subject to one of our 28-J letters — such that you cannot even — the — the ALJs do not even have the power to order discovery that does not relate to the specific merits of the thing that — that is being litigated. Right? So I — I don't know that as a practical matter, if you think about it, but the case that's closest to — to this situation is the McNary case. Right? McNary — right. And — and the reason that's close, because the Supreme Court took a very practical approach in that case. And the Supreme Court said, okay, this is a — a litigation about equal protection. Right? And so given the fact-finding ability of the agency, is this the right kind of fact-finding to be taking place in the agency? And the answer to that was no, one, because of the limitations on — on the ALJs or whatever the judges are in that case, in terms of what they can and cannot order to be produced. And the second was, well, you also would have to put somebody in — in an enviable position of having to submit themselves to deportation before we can even challenge that. Right? But — but those are two — two aspects of — of this analysis. Right? And in each case, incidentally, in each case, the Supreme Court is asking which question. It says, when deciding whether jurisdiction should be found, what we should look at is, what is the purpose of the review in the — in the administrative proceeding? And in each case, the Court says, the purpose is the — and this is true about every Supreme Court case. They're all aligned, actually. The — the question is this. If the administrative proceeding can apply itself to the facts, it can either by applying its — its expertise, or it can do away with — with the need to reach the constitutional merits. In Tilton, for example, if they win, they don't have anything to complain about. They're done. Right? In our case, even if they win, even if we win on the merits, the — the damage is done, and there is no remedy. What is the damage? What are you defining as the damage? The damage is — let — let me do it by analogy, because I think it's easier if — if I may, Your Honor. The SEC walks into the courthouse every day and asks for an injunction. Right? And it says it's a meaningful remedy. They say, we want to enjoin this person from future violation — violations of Federal securities laws. We want a finding that they did this on purpose and that they are enjoined from future — from doing this in the future. What — what happened in this case is really — it's — it's in our — it's in our complaint. But you have a proceeding and you prevail. But our — What is the damage? Well, the damage was that we were subjected to this proceeding for — for an improper — personal malice, actually. I mean, we think that we got into this proceeding because of personal malice. May I ask you a question just along those lines? Yes, of course. I better understand the class of one claim that you've got here. Had the situation been a little different? That is, had — so there were three cases prior to this case that went to disreport in 2011-2012. What if, in addition to your client, there were four other cases that the SEC, for its own reasons, simultaneously decided we're going to put them — we're going to put them in the ALJ proceeding assembly line? Would you then have a class of one claim? I have two answers to that, Your Honor. The first one is I think we would because I think that the Supreme Court in the village of Willowbrook, I think, is — is the case. It specifically says in the footnote it's not the numbers game. Okay. Okay? And so if you can allege bad intent, malicious intent, then — and you can allege — and there is a comparator, then I think you can succeed. So if — well, you get to your second answer. My second answer is that that — we're not — that is a secondary question to whether we should be — there should be jurisdiction, right? Because as Judge — Well, no. No. So — so Tilton seems to have changed the playing field a little bit in the sense that, at least with respect to the second issue of wholly collateral to the SEC proceeding, it suggests that if the claims are procedurally intertwined, broadly speaking, end of story, you're going to have to wait. We've got these bigger constitutional issues of separation of powers and so on and the structure of government. So too bad, so sad that you're going to have to go through this process. But once we determine that there is some minimal procedural interaction between the two claims, there is no jurisdiction. I think that Your Honor is correct that that is the basic thrust of Tilton. I think, however, that Tilton does not exclude the possibility of finding jurisdiction in this case, because while it is intertwined, Tilton also goes into the idea that you could wait, right? You could wait in that case and get a meaningful judicial review. And the basic, the most important element of the Thunder Bay's analysis, according to Tilton, is can you get a meaningful judicial review. And our point is you could in many cases, but you can't in this case. And I would also say — But you claim that you've already been injured, that the injury really in many ways can't be undone. You're right, Your Honor. It cannot be undone, but we could get a finding from a neutral judiciary that it did happen. I mean, right now what we have is allegations. Your Honor, in this case, one of the people involved in the investigation before us was charged, was an investor in the deal that ended up being charged. He worked for the SEC, and for six months he was actually part of the investigative team. I think that we are going to be able to show that he had an important material impact on — on not just the entire investigation, but also on the choice of forum. And that's — that's an unusual circumstance. And I should also say one other thing before, if you indulge me. So one of the undercurrents here is that we did appeal to the commission, right? We did bring these issues to the commission in the course — in an interlocutory appeal, right? We didn't run into the Federal District Court because we didn't like the merits or we didn't like the administrative proceeding. We went into the Federal District Court because we came into the case late, but we realized there was something wrong. Things did not add up. And so we tried to get relief from the — some of our constitutional issues. But the order is by delegated authority, issued by the Office of the General Counsel. So — so this is the conflict, right, that I'm — that I'm talking about. We accuse someone in the Enforcement Division of doing — of violating our client's constitutional rights. Their colleagues in the General Counsel's office write on behalf of the commission that there is no reason from the — from the Enforcement Division to — to defend what — what the — what the General Counsel's office did. In the meantime, they made this — they made this declaration in the name of the commission, and the commission, whom, by the way, we're not accusing of bad conduct. Let's be clear. No reason to. But the commission now has to live with the consequences of what the Enforcement Division and — and the General Counsel's office have done. And the test — the test that the Supreme Court, for these purposes, has presented is that you don't need to fund actual bias. What you have to look at is whether this situation, given psychological tendencies and normal human weakness, does this situation present such a — a — a probability or possibility of — of — of bias that it is, per se, a due process violation. It doesn't — you don't need to find that they're actually biased. You just have to find that they're conflicted. You reserve some rebuttal time. Yes. Yes, Your Honor. Thank you. Dominic Freed on behalf of the Securities and Exchange Commission. Well, I'd like to just start with, I think, just two things. You know, despite, you know, many efforts to try to distinguish this case from Tilton, I think — I do think the Tilton case is the best controlling of this — this case. Mr. Chau has, before the commission, pending a petition for review in which he raises his constitutional arguments. Once the commission issues an order, assuming — well, he could win, and according to, I think, Judge Srinivasan said in the Jharkhasi — Jharkhasi opinion, you know, the fact that he wins and it moots out his claims is a feature of the system, not a bug. But assuming that he doesn't win, he could then come to this court or the D.C. Circuit and raise his claims at that time. But his argument now is that — or Mr. Lipman's argument is that even if he wins, he loses because the injury is done. Well, that was exactly the same argument that Ms. Tilton made in the Tilton matter. And this Court's held that that is not a cognizable injury that would force or foreclose meaningful review. And it drew analogies to the criminal context in which similar arguments — for example, the selective prosecution claim made in a criminal context doesn't entitle you to interlocutory review if it's denied. You have to wait until an appeal from conviction. The same principle holds here. Nor does the claim that a judge is biased or has a conflict, correct? That's correct, yes. So, you know, there really is no daylight between this case and the Tilton matter. The one thing that he does claim is different is his claim that discovery is necessary in order to build a record for his equal protection argument. But that argument itself is foreclosed by the Elgin argument, which was highlighted in our brief. So if you take the combination of Elgin and Tilton, there really isn't anything in this case that would provide for any subject matter jurisdiction. Could you elaborate a little bit on the Elgin — on your brief's argument regarding Elgin? Sure. In Elgin, the argument before the court was that the record through the process would be insufficient in order to demonstrate that — in that case, there was an argument that the Selective Service law was unconstitutional. And so there was even the notion that the agency itself couldn't even decide the constitutional question because of the facial challenge to the statute. The court said, well, that may be — may or may not be true, but that doesn't preclude effective judicial review. It doesn't preclude the court from reaching the issue. And it also disposed of the argument that — made by the petitioners there, that the record would be insufficient to decide the claim. And the court said, well, wait a minute. And this has been repeated by other courts, including the D.C. Circuit, and a couple of courts' cases we decided in our brief. So wait a minute. If the statutory scheme is set up such that the court of appeals has the power to remand, to adduce additional evidence, or order the agency to supplement the record, make additional factual findings, well, then that's adequate for meaningful judicial review. And that's exactly what we have here in the statutes that Judge Amon actually was referencing earlier. So, but Elgin didn't hold that that was true in all circumstances. Correct me if I'm misunderstanding Elgin's holding. And I guess his argument is that there is — it's peculiar to his claim that in this equal protection context, the fact finders, the tribunal in which he's making the claim, is not going to give him an adequate opportunity to develop the record. And by the time he gets to the court of appeals, the court of appeals has the supplemental power, but it needed to happen earlier to effectively develop this claim. Well, I mean, it's just a matter of timing, really. What he's asking for is to put the cart before the horse. Because, you know, what we have, we don't know what, you know, if the commission issues an order that finds against him, and if it determines that his equal protection argument is without merit. And if he then argues to this court that the record was insufficient, and if this court agrees, well, then, you know, then he may go back. But there's a number of steps that we have to — or a number of hoops we have to jump through in order to get to that point. So — What happens if the commission finds bias? If the commission were to find bias? Three members of the commission. Are there still five? There are three right now. There are only three? Yes. What's a quorum? Three. Three. Okay. So commissioners unanimously find — It would be two, Your Honor. I'm sorry. Okay. Two or three commissioners find bias. Then what happens? Well, I would imagine that in that circumstance, the commission would take appropriate action. It could vacate the findings of the ALJ and any liability determinations. It could set it for rehearing. It depends on what the scope of that finding were, you know, were to encompass. But there are certainly — and I guess more importantly in this circumstance, even if the commission were not to find bias, even if the commission were to reject the claims and were to find against Mr. Chau on the allegations, the court of appeals could find that. And in this court, I'm confident — I understand that. It could determine an appropriate remedy. It could vacate the entire findings and any liability and any remedies. And so that — and that's the way that we correct legal errors all the time in all different circumstances. What are the factors that the SEC considers publicly in determining whether to proceed in federal district court or before an ALJ? Excuse me for a minute. Well, there are no public factors for the commission's determination. There are factors that the Division of Enforcement has released. Yeah. Well, they only make the recommendation, though. It's up to the commission to determine whether to bring the case as an administrative proceeding or in district court. And so those — ultimately, it's just up to the commission. So those — You tell me that the commission doesn't have public factors that it turns to or relies on in making that determination. It's alluded in a couple of cases in which this claim has been raised or a similar claim has been raised. Again, I'm — I don't want to — I don't want to give any answers that would be deemed to be prejudging how this case were to be determined because it is before the commission right now based upon his argument. You're not prejudging. Right. No, no. I just want to — I just want to make clear. So it has alluded to the fact that sometimes the complexity of the allegations would, you know, would be a reason to decide between an administrative proceeding and a district court action. It views its own process as having expertise as, you know, is pretty much the premise of these channeling cases, which is that the agencies have developed expertise in a certain area of law, and therefore that's where they prefer to bring the cases. So that's one of the factors that it has alluded to in determining this claim in the past. You mean the accretion of expertise over time? Yes. And then you develop that expertise at federal district court, and then you — No, I'm sorry. We develop it in our administrative proceedings. Oh, I see. So the commission — yes. So, yeah. So the commission views itself as being an expert in the securities laws. And so if there — the complexity of the matter may counsel in favor of — but also the type of relief that the commission is seeking may favor one forum over the other. There are certain types of relief that are unavailable in federal court. For example, a bar is sometimes unavailable in federal court depending on the claim that's being raised. So that's another reason that could be taken into account. But, again, it's the commission's determination, so, you know, those are the — Could you address the wholly collateral prong of this analysis and what you think we said in Tilton and whether we got it right in the commission's view? Oh, I wholeheartedly agree with that. In fact, we've briefed this issue in a number of jurisdictions, and it's the way that we've conceptualized it. Anything that is — any claim that is raised during an administrative proceeding, that is the vehicle by which the petitioner attempts to avoid the action that's being alleged against them, is not wholly collateral to the action. It's a defense. And it would be a way of vacating the action that the commission takes if successful on the claim. So we do agree with it. And that test — so from the commission's view, that is preferable, the better interpretation of the test that relied on factual independence or interdependence. Yeah. I mean, if you're trying to make sense of what this test is attempting to do from the Free Enterprise case and from Thunder Basin, it's trying to determine when the claim being brought falls outside of the scheme, essentially can't be decided as part of the scheme. And, you know, it's a rare instance the Free Enterprise case is somewhat shoei generous. And so wholly collateral really means wholly collateral. It cannot be decided in the claim. And that's how I've personally conceptualized it. Tilton wasn't an equal protection case, but equal protection was raised in the D.C. Circuit case, Jarchese v. SEC. Yes. Do you view that as the same equal protection claim that's being raised here? Yes. It was a challenge to basically the commission's choice of forum between the district court and between the administrative forum in which to bring the claim. And so, yes, I do believe it's on all fours. Okay. Thank you. The Court has nothing further. Thank you. Thank you. Your Honor, to answer your question on Jarchese, it is exactly — No, I didn't ask it of you, right? Well, I — but I think it's important that it is exactly the same. They did — No, is that case wrongly decided in your view? It is wrongly decided for this reason. It's wrongly decided because what — and this quote that it moots out, the fact that it might moot out the features is a feature, not a bug. But the case that the D.C. Circuit relies on that preposition for is Standard Oil. And the problem there is that — here's the facts of Standard Oil. In Standard Oil, Standard Oil and a bunch of other companies, oil companies, were being sued administratively by the FTC. And they said — they went into Federal district court and they said, you need to stop that. They do not have a good-faith basis. They don't have a factual basis for making the allegations that they're making. And the Court said, well, no, you have to wait until the end. But the facts are, if they didn't have — if the allegation is that the FTC did not have a factual basis for its complaint, then it's an attack on the merits, right? And so the merits are going to have to be decided whether in an administrative proceeding or in Federal district court, and it makes sense to wait. The other question that the panel asked about whether Tilton is correctly decided and if I just heard what the SEC's position is, is that the — that free enterprise is limited to its facts and that there is no opportunity to find jurisdiction. If that were the case, then the Supreme Court would have said that, that it's limited to these facts. If you would have a pre-enforcement challenge such that this challenge cannot be part of some future enforcement proceeding, then that is the one circumstance in which jurisdiction is appropriate. That's not what they said. They did a three-part analysis. And what I was saying before about — I think that it does, but nonetheless, I think that the problem that we present, I think, is also a unique problem because, again, we would be — we put in Williams v. Pennsylvania. It's a very interesting case, right? There is a case in which a judge on the Supreme Court of Pennsylvania failed to recuse himself in a fourth habeas petition relating to something that happened some 30 years ago when he was the DA for — in Pennsylvania in a death penalty case, right? The allegation on — the reason for the habeas was prosecutorial misconduct, but not by him. And what the Court said was, you know what, even though it's 30 years ago, even though it's not misconduct by him, it is misconduct in his office. It is somebody who reported to him, and because of that, he just might be in a position where he wants to defend them, right? And so here we are alleging — But that claim wasn't brought beforehand. In other words, there wasn't a claim that, Judge, you cannot hear that case, any interlocutory, if you will, attack on that. That case was decided after the judge had decided the case. It's the point I made before. You can't interrupt, for instance, a criminal proceeding, stop the proceeding, and make a claim of bias of the judge or conflict of the judge. It has to play itself out. That is true, but in every one of those proceedings, you have a record from which to establish whether there is a bias or whether there is not a bias. Here, the problem is that all we have right now is we have our allegations, and the Court of Appeals can look at that and say, well, we don't know. Did you characterize the allegations that you made, the claim, this Class of 1 claim, as an affirmative defense? Is that what it is? We may have classified that. That's a good question. I think we may have, but I don't think it is an affirmative defense, actually. You may have, but it's not. Well, you know what, we... Why don't you pause for a second? Oh, yeah. I'm sorry. My brain is next to me, so I'm getting a little help. There are no counterclaims, right? So you're looking for a vehicle for... But it was an affirmative defense. Well, it's... Correct? It is an affirmative defense, but even though it's an affirmative defense, again, there's no record, right? And the record that needs to be developed would be developed by the people whom we are  That's the problem. Thank you, Your Honor. Thank you both. We'll take it under advisement.